<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BOARD OF TRUSTEES | : | |
| OF PLUMBERS & PIPEFITTERS | : | |
| LOCAL UNION NO. 9 WELFARE FUND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. No. 09-5069 (GEB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| RICHARD DREW, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the following: (1) Plaintiff Board of Trustees of Plumbers & Pipefitters Local Union No. 9 Welfare Fund's ("Plaintiff") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 13) on its complaint seeking equitable relief; and (2) Defendant Richard Drew's ("Defendant") motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. No. 14.)  The Court has reviewed the parties' submissions and decided this motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's motion for dismissal or, in the alternative, summary judgment.

I.      **BACKGROUND**

   **A. Facts**

Plaintiff is "a sponsor and fiduciary of the Plumbers & Pipefitters Local Union No. 9 Welfare Fund [("Fund")]," which is "a Federal, tax exempt, multi-employer, employee welfare benefit plan, as that term is defined in §§3(1), (3) and (37) of the Employee Income Security Act of 1974 [("ERISA")], 29 U.S.C. §§ 1002(1), (3) and (37)."  (Pl.'s R. 56.1 ¶¶ 1, 2; Doc. No. 13-1) (Def.'s Responsive R. 56.1 ¶¶ 1, 2; Doc. No. 21-1.)  Defendant is a participant in the terms and conditions governing the Fund, (Compl. at ¶ 6; Doc. No. 1) (Answer at ¶ 6; Doc. No. 3) which are described in the Plan and Summary Plan Description ("SPD").  (Pl.'s R. 56.1 ¶¶ 4, 5; Def.'s Responsive R. 56.1 ¶¶ 4, 5.)

On September 18, 2001, Defendant was in an automobile accident.  (Pl.'s R. 56.1 ¶ 14; Def.'s Responsive R. 56.1 ¶ 14.)  Plaintiff paid $181,579.61 for Defendant's treatment, from September 21, 2001 to January 21, 2009.  (Pl.'s R. 56.1 ¶ 17; Doc. No. 13-1) (Def.'s R. 56.1 ¶ 8; Doc. No. 14-1) (Compl. Ex. F.)[1]  Defendant subsequently filed a claim for uninsured/underinsured motorist ("UIM") benefits.  (Pl.'s R. 56.1 ¶ 15; Def.'s Responsive R. 56.1 ¶ 15.)  On September 14, 2008, Defendant settled his UIM claim for $900,000.  (Pl.'s R. 56.1 ¶ 26; Def.'s Responsive R. 56.1 ¶ 26.)  Prior to the settlement, Plaintiff provided Defendant with the Repayment Agreement ("Agreement") for the money paid by Plaintiff.  (Def.'s R. 56.1 ¶ 12; Pl.'s Responsive R. 56.1 ¶ 12.)  Defendant's attorney modified the Agreement to state that

---

[1] In his 56.1 statement, Defendant states that he "secured coverage for his accident-related medical expenses from his health plan, provided through his union by plaintiff in this matter. The plan paid in excess of $181,000 for his treatment."  (Def.'s R. 56.1 ¶ 8; Doc. No. 14-1.) Conversely, in his response to Plaintiff's 56.1 statement, Defendant claims that "[a]pproximately $13,000 in medical expenses Plaintiff seeks in this action are unrelated to the accident for which Mr. Drew's personal injury claims were brought."  (Def.'s Responsive R. 56.1 ¶ 17; Doc. No. 21-1.)  Given his express admission in his own 56.1 statement, the Court determines that there is no issue of fact here.

the repayment obligation was limited to payments received by Defendant for medical bills and returned the Modified Agreement, which is dated July 15, 2002.  (Pl.'s R. 56.1 ¶¶ 19, 20; Def.'s R. 56.1 ¶ 14; Solomon Cert. Ex. K; Compl. Ex. C.)  Plaintiff required Defendant sign an Addendum to the Agreement ("Addendum") providing a lien be placed on the amount paid by the Fund and acknowledging Defendant's "responsibility to give full force and effect to the Subrogation Rights as per the attached pertinent section of the Fund's Rules and Regulations," which Defendant and his attorney signed on July 18 and July 22, 2002, respectively.  (Def.'s R. 56.1 ¶ 15; Pl.'s Responsive R. 56.1 ¶ 15; Solomon Cert. Ex. L; Compl. Ex. D.)  Defendant's attorney has deposited the amount of $181,579.61 into her attorney trust account.  (Pl.'s R. 56.1 ¶ 30; Def.'s Responsive R. 56.1 ¶ 30.)  Defendant has not reimbursed the Fund for the benefits it paid for his medical claims and expenses.  (Pl.'s R. 56.1 ¶ 31; Def.'s Responsive R. 56.1 ¶ 31.)

### B.  Procedural History

On October 2, 2009, Plaintiff filed the instant complaint against Defendant.  (Compl.; Doc. No. 1.)  Plaintiff's complaint levies three counts against Defendant: Count One alleges Defendant's failure to reimburse Plaintiff for the benefits it provided constitutes a violation of 29 U.S.C. § 1001 *et seq.*, ERISA; Count Two alleges Defendant breached the subrogation provisions of the terms and conditions of the Fund ("Plan"); and Count Three alleges Defendant breached the provisions of the Agreement and Addendum.  (Doc. No. 1.)  Defendant filed his answer and affirmative defenses on November 30, 2009.  (Doc. No. 3.)  On July 23, 2010, Plaintiff filed a motion for summary judgment.  (Doc. No. 13.)  Also on July 23, 2010, Defendant filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 14.)

To remedy Defendant's alleged violation of ERISA, Plaintiff asks the Court to:

3

> [impose] a constructive trust and equitable lien in favor of the Fund upon the
> Proceeds of $181,579.61 recovered by Defendant from the settlement of the UIM
> Claim as well as for any other medical claims or plan benefits as they have arisen
> or may arise; [declare] that the Fund is the rightful owner of the Proceeds . . .
> [direct] Defendant to reimburse the Fund for the Benefits Paid by turning over the
> Proceeds . . . received by Defendant . . . together with reimbursement for any other
> medical claims or plan benefits that have since arisen or may arise; [and award]
> interests, costs, and attorneys' fees as permitted by ERISA, 29 U.S.C. § 1132(g) . .
> . .

(Compl.)  To remedy Defendant's breach of the subrogation provisions of the Plan and SPD and of the Agreement and Addendum, Plaintiff  "demands judgment against Defendant in the amount of $181,579.61 and any other medical claims or plan benefits that have arisen or may arise, together with interest, fees and costs of suit."  (*Id.*)

Conversely, Defendant moves for dismissal or, in the alternative, for summary judgment, and presents various legal and factual grounds in support of his motion.  (Def.'s Mot. Br.; Doc. No. 14-4.)  Specifically, Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff's claim does not fall under the purview of ERISA as Plaintiff is not seeking equitable relief.  (*Id.* at 2.)  In addition, Defendant contends that Plaintiff's claims are barred by state and common laws.  (*Id.*)

Plaintiff opposes Defendant's motion for dismissal or, in the alternative, summary judgment and separately moves for summary judgment, maintaining that its subrogation language is unambiguous and state and common law is inapplicable in such cases as it is preempted by ERISA.  (Pl.'s Mot. Br.)

After reviewing the parties' submissions, the Court concludes Defendant's motion for dismissal or, in the alternative, summary judgment, should be denied and that Plaintiff's motion for summary judgment should be granted.

## II.   DISCUSSION

### A.  Defendant's Motion for Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for Lack of Subject Matter Jurisdiction.

Defendant moves to dismiss Plaintiff's claim for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and argues that ERISA is inapplicable as Plaintiff is not seeking equitable relief.  "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  *Gould Elecs., Inc., v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408 (3d Cir. 1991)). Moreover, "[a] district court may [] grant a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to [Federal Rule of Civil Procedure 12(b)(1)] 'based on the legal insufficiency of a claim.'"  *Danowski v. United States*, 924 F.Supp. 661, 665 (D.N.J. 1996) (quoting *Kehr Packages,* 926 F.2d at 1408).  To defend against a 12(b)(1) dismissal, "the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists."  *Id.*

As Plaintiff's claim arises under ERISA, Plaintiff invokes 28 U.S.C. §1331 jurisdiction, which holds that "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Moreover, "Congress has expressly provided for jurisdiction over ERISA cases in 29 U.S.C. § 1132(e)."  *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).  Furthermore, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), states:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of

the plan.

Thus, this Court's jurisdiction is appropriate if Plaintiff presents a legally sufficient, nonfrivolous claim; namely, if Plaintiff is seeking equitable relief.

Defendant argues that Plaintiff is not seeking equitable relief and that, consequently, Plaintiff's claim does not fall within ERISA's purview and this Court lacks subject matter jurisdiction. (*See* Def.'s Mot. Br. at 5-11.) Defendant presents various arguments in support of his position that the relief sought by Plaintiff does not qualify as "appropriate equitable relief;" specifically, Defendant contends that the Court lacks subject matter jurisdiction because the Plan's subrogation provision "does not purport to create any actual lien against settlement proceeds themselves . . . lay claim to any first-priority right of recovery . . . abrogate either the made-whole or common-fund doctrines [or] even express any subrogation right on behalf of the plan in a beneficiary's third-party claim." (*Id*. at 5.) In addition, Defendant maintains that the Fund is not entitled to any portion of the UIM settlement due to New Jersey's auto insurance and collateral source statutes. (*Id*. at 7, 9.) The Court is not persuaded by any of these arguments and concludes that Plaintiff has carried its burden of persuading this Court that it has subject matter jurisdiction over the present case.

### i. The Plan creates a right to equitable relief.

The U.S. Supreme Court has held that since "'equitable' relief must mean *something* less than *all* relief,' . . . 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity . . . .'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 258 n.8, 256 (1993)). Although "not all relief falling under the rubric of restitution is available in equity," "a

6

plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. at 212, 213. "[F]or restitution to lie in equity, the action generally must seek . . . to restore to the plaintiff particular funds or property in the defendant's possession." *Id*. at 214.

Here, where Plaintiff asks the Court to "[impose] a constructive trust and equitable lien" on specifically identified money located in a trust, Plaintiff is seeking restitution in equity.  (*See* Compl.)  This case is similar to *Sereboff v. Mid Atlantic Medical Services, Inc.*, where the U.S. Supreme Court found that a health plan was entitled to reimbursement for medical expenses paid to participants, finding that the plan sought "'specifically identifiable funds' [] --that portion of the tort settlement due [the plan] under the terms of the ERISA plan, set aside and 'preserved [in the [plan participants']] investment accounts.'"  547 U.S. 356, 362-63 (2006).  As in *Sereboff*, the plan here is seeking "its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [participant's] assets generally . . . ."  *Id*. at 363. Specifically, the funds sought by Plaintiff are in an escrow account maintained by Defendant's attorney.  (Pl.'s R. 56.1 ¶ 30; Def.'s Responsive R. 56.1 ¶ 30.)  Moreover, as in *Sereboff*, the Plan in the instant case "specifically identified a particular fund, distinct from the [participant's] assets . . . and a particular share of that fund to which [the Plan] was entitled . . . ."  *Id*. at 364.  The "particular fund" in this case is "any payment made as a result of [a claim for medical benefits payable under Workers' Compensation or similar statute or a legal action to recover damages for personal injury or illness]" and the "particular share of that fund" is "the benefits paid out by the Fund."  (Compl. Ex. A.)

In contrast, the present case is unlike *Great-West Life & Annuity Insurance Co. v. Knudson*, in which the U.S. Supreme Court found that the plaintiff's claim was not equitable where the plaintiff plan sought to impose personal liability upon the defendant participant for plaintiff's reimbursement. 530 U.S. at 210, 214. Here, the kind of restitution sought by Plaintiff is equitable, involving "identifiable funds [] belonging to the plaintiff and held by the defendant . . . ." *Id.* at 216. Moreover, in *Knudson*, unlike in *Sereboff* and the present case, the Court found that the funds sought by the plan were not in the plan participant's possession and therefore the restitution was not equitable. *Sereboff*, 547 U.S. at 365; *Knudson*, 534 U.S. at 214.

Defendant argues that the Fund must "assert [] title or right to possession of the personal injury settlement obtained in the underlying automobile case" in order to be able to obtain equitable relief. (Def.'s Mot. Br. at 5.) However, Defendant ignores the rulings discussed above that establish it is sufficient that the money claimed by Plaintiff is in an escrow account for Plaintiff to be entitled to equitable relief. In addition, Defendant's contention that the SPD does not "express any subrogation right on behalf of the plan beneficiary's third-party claim" is without merit. (Def.'s Mot. Br. at 5.) Defendant relies on *Popowski v. Carillo*, 461 F.3d 1367 (11th Cir. 2006), an Eleventh Circuit case, to show what he apparently considers to be the exemplary plan in which a reimbursement obligation would be triggered. (Def.'s Mot. Br. at 6-7.) Defendant argues that since here, unlike in *Popowski*, "the plan language does not even mention creation of a lien, nor does it claim any priority in recovery rights, nor does it abrogate either the made-whole or common-fund doctrines," Plaintiff is not entitled to reimbursement. (Def.'s Mot. Br. at 7.)

However, Defendant does not cite to any case from this Circuit that establishes this as a

requirement.  Rather, the Third Circuit has not expressed any factors required for restitution to be appropriate and, in fact, "'ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans.'"  *Walker v. Rose*, 22 F.Supp. 2d 343, 347 (D.N.J. 1998) (quoting *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3d Cir. 1991)).  On the contrary, in *Blue Gray Enterprises v. Gourley*, the Third Circuit found an ERISA plan was entitled to reimbursement where the plan language was broad but unambiguous regarding reimbursement, finding that "[w]hile [the relevant] provision contemplates broad rights to reimbursement, we do not believe this translates into ambiguity."  248 F.3d 206, 220 (3d Cir. 2001).

Here, the SPD states:

> If the Fund pays benefits to or on behalf of a Participant . . . arising out of any event for which the Participant files, or has the right to file, a claim for medical benefits payable under any Workers' Compensation or similar statute or a legal action to recover damages for personal injury or illness, the Participant shall notify the Fund of such claim or action and the Fund shall be entitled to reimbursement from *any payment* made as a result of such claim or action to the *full extent of the benefits paid out by the Fund*.

(Compl. Ex. A (emphasis added).)  Furthermore, the Agreement states that Participant:

> agree[s] that with respect to *any payments* received . . . which shall include payment for 'pain and suffering' by way of either judgment or settlement arising out of [workers' compensation, personal injury or similar claim], [Participant] shall repay the Fund for *all payments made* to [Participant], arising out of or relating to the [] claim.

(Compl. Ex. B (emphasis added).)  Defendant, however, signed a Modified Agreement, stating Defendant:

> agree[s] that with respect to any payments received by me for *medical bills* which shall include U.I.M. claims made by way of either judgment or settlement arising out of said claims, I shall repay the Fund for all payments made to me . . . arising

9

out of or relating to the aforesaid claim.

(Compl. Ex. C (emphasis added).)  The part of the Addendum signed by Defendant states:

> I, Richard Drew, participant, hereby agree to have a lien placed on my file for all actions taken as a result of my September 18, 2001, accident and I acknowledge my responsibility to give *full force and effect to the Subrogation Rights as per the attached pertinent section of the Fund's Rules and Regulations*.

(Compl. Ex. D (emphasis added).)  The portion of the Addendum signed by Defendant's attorney states:

> I, Anna Mae Perillo, am the legal representative for the participant and do hereby acknowledge that I have placed a lien on Mr. Drew's file and acknowledge that we shall have an affirmative duty to *assert the Fund's medical lien and we shall be required to show proof to the Fund that said medical lien was fully protected*.

(*Id*. (emphasis added).)  The "attached pertinent section" states "the Fund shall be entitled to reimbursement from *any payment* made as a result of such claim or action to the *full extent of the benefits paid out by the Fund*."  (Solomon Cert. Ex. L (emphasis added).)  The Court concludes that these plan documents are inarguably "'written in a manner calculated to be understood by the average plan participant, and [] sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'"  *Blue Gray*, 248 F.3d at 218 (quoting U.S.C. § 1022(a)).

Plaintiff clearly seeks, and is entitled to, restitution in equity; therefore, this Court has subject matter jurisdiction pursuant to ERISA.

### ii.  ERISA preempts state laws.

Defendant further contends that Plaintiff cannot be seeking equitable relief because of New Jersey's auto insurance and collateral source statutes and that, as a result, this Court lacks subject matter jurisdiction.  Specifically, Defendant maintains that Plaintiff cannot claim that

10

"the property it identifies as subject to [the] proposed trust and lien 'belong[s] in good conscience' to the plan," relying on the mistaken belief that New Jersey auto insurance and collateral source statutes block Plaintiff's claims. (Def.'s Mot. Br. at 7-8.)  Defendant argues that the Fund is only entitled to reimbursement for payments for medical expenses and since the New Jersey auto insurance law "mandate[s] first-party [Personal Injury Protection] coverage is both the required and the primary vehicle to pay medical expenses in automobile accidents . . . third-party motor vehicle liability policies - and the UM/UIM policies that supplement their coverage limits - are by definition intended to compensate for other losses," the UIM settlement Defendant received could not have been for medical expenses and Plaintiff is therefore not entitled to reimbursement from the settlement. (*Id*. at 8.)  Defendant further attempts to bolster this argument by contending that the UIM settlement could not have been for medical expenses because New Jersey's collateral source statute, which prevents a plaintiff from recovering in tort for any covered loss, bars Plaintiff from claiming any portion of the UIM settlement. (*Id*. at 9.) These arguments are without merit as ERISA preempts state laws.

"The ERISA preemption clause, 29 U.S.C. § 1144(a), provides . . . 'the provisions of this subchapter [] shall supersede any and all State laws insofar as they may not or hereafter relate to any employee benefit plan . . . .'" *Blue Gray*, 248 F.3d at 212. "Courts have interpreted ERISA's preemption clause broadly, noting Congress' intention to make ERISA 'an area of exclusive federal concern.'" *Id*. (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990)). If a law relates to an ERISA plan, it will not be preempted only if it regulates insurance, pursuant to ERISA's savings clause, 29 U.S.C. §1144(b)(2)(A). *See id*. A state law must meet two requirements in order to be deemed to be a law which regulates insurance: "First, the state law

11

must be specifically directed toward entities engaged in insurance.  Second, [] the state law must

substantially affect the risk pooling arrangement between the insurer and the insured."  *Ky. Ass'n*

*of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).  "A law 'relates to' an employee

welfare plan if it has 'a connection with or reference to such a plan.'"  *Danowski*, 924 F.Supp. at

670 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).  However, according to

ERISA's deemer clause, 29 U.S.C. § 1144(b)(2)(B), "[n]either an employee benefit plan . . . nor

any trust established under such a plan, shall be deemed to be an insurance company or other

insurer, bank, trust company, or investment company or to be engaged in the business of

insurance or banking for purposes of any law or any State purporting to regulate insurance

companies, insurance contracts, banks, trust companies, or investment companies."  Thus,

"'[s]tate laws directed toward the [employee benefit] plans are pre-empted because they relate to

an employee benefit plan but are not 'saved' because they do not regulate insurance.'"  *Blue*

*Gray*, 248 F.3d at 213 (quoting *FMC Corp.*, 498 U.S. at 61).

Clearly, New Jersey's auto insurance and collateral source statutes are preempted by

ERISA and therefore, under the facts of this case, are inapplicable.[2]  "[W]here . . . the medical

benefits in question are provided under an employer's fully self-funded employee health care

---

[2] In his briefs, Defendant argues that these statutes govern tort liability and therefore do not relate to ERISA.  (Def.'s Mot. Br. at 16.)  Defendant relies on *Rhodia, Inc. v. Bollinger*, 2008 U.S. Dist. LEXIS 22045 (D.N.J. 2008), which the Court notes has no precedential effect.  The Court concludes Defendant's argument are wholly without merit.  These statutes clearly "relate to" ERISA plans, the auto insurance statute by defining UIM coverage, and thereby providing a vehicle with which to limit ERISA plans' reimbursement, and the collateral source statute by "purport[ing] to reach all 'benefits, other than workers' compensation benefits or the proceeds from a life insurance policy.'"  *Danowski*, 924 F.Supp. at 671 (quoting N.J. Stat. Ann. § 2A:15-97 (West Supp. 1995)).  As the U.S. Supreme Court has stated, "Congress used the words 'relate to' . . . in their broad sense."  *Shaw*, 463 U.S. at 98.

plan . . . then the plan is not deemed to be insurance for purposes of ERISA's insurance savings clause . . . . Rather, such a plan is . . . protected by ERISA's deemer clause . . . and preemptive of state insurance laws and regulations, including . . . New Jersey's collateral source rule." *White Consolidated Industries, Inc., v. Pei Lin*, 372 N.J. Super. 480, 488 (App. Div. 2004) (internal citations omitted).  These statutes regulate insurance and therefore where, as here, the medical benefits were provided under a self-funded employee health care plan, these statutes cannot purport to regulate the ERISA plan in question.

Thus, this Court has subject matter jurisdiction, and the Court therefore proceeds to consider Defendant's and Plaintiff's respective motions.

**B.  Defendant's Motion for Federal Rule of Civil Procedure 12(b)(6) Dismissal for Failure to State a Claim or, in the alternative, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.**

Defendant next argues that he is entitled to dismissal or, in the alternative, summary judgment.  For a complaint to survive a motion to dismiss for "failure to state a claim upon which relief can be granted" (FED. R. CIV. P.  12(b)(6)), it must include "more than labels and conclusions;" its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In deciding a motion to dismiss, courts must conduct a "two-part analysis":

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).  In conducting this analysis, "'courts accept all factual allegations as true, construe the complaint in

13

the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

A party seeking summary judgment must "show that . . . [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). The moving party carries the burden of showing "the absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In countering a motion for summary judgment, the nonmoving party has the burden of "showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmoving party "may not rely merely on allegations or denials" but must present "specific facts." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Defendant contends that Plaintiff fails to state a claim upon which relief may be granted and that there is no genuine issue as to any material fact. Specifically, Defendant maintains that the language of neither the Plan nor the Agreement support a reimbursement claim. (Def.'s Mot. Br. at 13.) Defendant further argues that the made-whole doctrine precludes the relief sought by

14

Plaintiff.  (*Id*. at 14.)  The Court is not convinced any of Defendant's arguments are meritorious; rather, the Court holds that the language found in the Plan is unambiguous and Plaintiff is entitled to reimbursement as a matter of law.

### i. The Plan language is unambiguous and supports Plaintiff's reimbursement claim.

"ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d 123, 127 (3d Cir. 1996).  As previously discussed, the Third Circuit has found that a plan's language is not ambiguous merely because it is broad.  *Blue Gray*, 248 F.3d 206, 218.  Rather, "[w]hether terms in an ERISA Plan document are ambiguous is a question of law. A term is 'ambiguous if it is subject to reasonable alternative interpretations.'"  *Id*. at 220 (quoting *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991)).

Here, the SPD, Agreement, and Fund's Rules and Regulations attached to the Addendum all state, in essentially identical language, that the Fund is entitled to reimbursement of the "full" benefits paid by the Fund from "any" payments made as a result of claims brought by plan participants related to the event which gave rise to the Fund's paying the participant benefits. (*See* Compl. Ex. A, B; Solomon Cert. Ex. L.)  This language is unambiguous and clearly puts forth the Fund's entitlement to reimbursement.  Defendant argues that he changed the language in the Agreement and signed a Modified Agreement which specified that he would only reimburse the Fund for "any payments received . . . for medical bills . . . ."  (Solomon Cert. Ex. K.)  Regardless of whether Plaintiff agreed to this modified language or not, this language was nullified by Defendant's signing of the Addendum, which, as already discussed, stated that he

15

"acknowledge[s his] responsibility to give full force and effect to the Subrogation Rights as per

the attached pertinent section of the Fund's Rules and Regulations," which in turn again specified

that the Fund is "entitled to reimbursement from any payment made . . . to the full extent of the

benefits paid out by the Fund." (Solomon Cert. Ex. L.) Furthermore, while Defendant makes

much of the fact that "the Plan language makes no mention of any right of the Plan to subrogate a

beneficiary's claims" (Def.'s Opp'n & Reply Br. at 3), this is irrelevant. Rather, the Plan

language clearly establishes a right to reimbursement. As in *Sereboff*, Plaintiff's claim in the

present case "is not considered equitable because it is a subrogation claim [but] because it is

indistinguishable from an action to enforce an equitable lien established by agreement . . . ." 547

U.S. at 368. To reiterate, the relief sought in this case is equitable because, as in *Sereboff*,

Plaintiff here could "'follow' a portion of the recovery 'into the Defendant's hands' 'as soon as

[the settlement fund] was identified,' and impose on that portion a constructive trust or equitable

lien." *Id*. at 364 (quoting *Barnes v. Alexander*, 232 U.S. 117, 123 (1914)).

  As discussed, the present case is similar to *Blue Gray*, in which the question presented to

the Third Circuit was "whether reimbursement is required when a covered person receives

payments that are unrelated to medical costs." 248 F.3d at 219. As in the present case, the

defendant in *Blue Gray* argued that the settlement he received was not subject to reimbursement

because it was unrelated to his medical bills. *Id*. The Third Circuit determined that the plan's

language was unambiguous where it stated "'[a]ll amounts received will be subject to

subrogation and reimbursement'" and therefore the plan was entitled to reimbursement. *Id*. at

219.[3]  The Third Circuit found that "'courts have no right to torture language in an attempt to force particular results . . . the contracting parties never intended or imagined. To the exact contrary, straightforward language . . . should be given its natural meaning.'"  *Ryan*, 78 F.3d at 126 (quoting *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir. 1989)). This Court likewise declines to find ambiguity where there is none.

Defendant maintains that the SPD's subrogation clause "does not in fact create any subrogation right at all, nor does it even make any reference to assuming any rights of prosecuting any claims a plan beneficiary might have. Moreover, while the plan speaks generally of the Fund's 'entitle[ment] to reimbursement,' it does not actually create any right of reimbursement exercisable against the beneficiary himself." (Def.'s Mot. Br. at 13.)  Defendant also relies on the fact that "[n]o form of the term 'subrogation' appears anywhere in the contract provision, save for the title, nor is there any reference to any assignment of a beneficiary's claim or any other similar mechanism by which an actual subrogation right might be created or pursued." (Def.'s Opp'n. Br. at 3.)  Defendant goes on to make the argument that "there is simply no 'subrogation' claim to be made against one's own insured." (Def.'s Mot. Br. at 13.)[4] The Court has addressed these arguments in the previous section and determined that they hold

---

[3] Unlike the present case, the plan at issue in *Blue Gray* also had a provision specifying that the plan was entitled to reimbursement when a participant recovered under an uninsured or underinsured motorist plan.  248 F.3d at 220.  However, the Third Circuit determined that the plan was unambiguous and entitled to reimbursement even without this specific provision.  *See id*.  Therefore, the lack of a similar provision in the Plan before this Court does not harm Plaintiff's contention that it is entitled to relief.

[4] Although "subrogation and reimbursement provisions are no longer permitted in New Jersey health insurance policies" (*Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308 n.5 (3d Cir. 2006); *see also Levine v. Horizon Healthcare Services, Inc.*, 402 F.3d 156, 160 (3d Cir. 2005)), as already discussed, ERISA health plans are not deemed to be insurance.

no merit.

In sum, for the foregoing reasons, the Court concludes that the Plan language unambiguously entitles the Fund to reimbursement for the benefits paid to Defendant as a matter of law.

### ii. Given that the Plan language is unambiguous, ERISA preempts Common Law doctrines.

"The make whole rule is an equitable principle which, absent an agreement to the contrary, prohibits an insurer from enforcing a right to subrogation until the insured has been fully compensated for his injuries--i.e., made whole." *Walker*, 22 F.Supp. at 350. Defendant argues that "even if a reimbursement right could somehow be read into the plan language where none exists, the made-whole doctrine would affirmatively bar any such claim." (Def.'s Mot. Br. at 14.) Defendant refers to several cases from other Circuits in support of this contention. (*See* Def.'s Mot. Br. at 15.) However, the law is well settled in the Third Circuit that where plan language is unambiguous, the make whole doctrine will not be applied. *See Blue Gray*, 248 F.2d at 220 n.13. Specifically, the Third Circuit has held that "a common law principle [may be adopted] only if 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir. 1997) (internal citations omitted). Moreover, "courts have held that importing federal common law doctrines to ERISA plan interpretation is generally inappropriate, particularly when the terms of an ERISA plan are clear and unambiguous." *Blue Gray*, 248 F.3d at 220 n.13.

In *Walker v. Rose*, the Court determined that "[a]s the language of the Plan is clear, this Court will not apply a common law rule of interpretation which is contrary to the terms of the plan." 22 F.Supp. at 351. The plan in *Walker* provided for "'a first lien upon any recovery' that

18

defendants receive from a third-party" and the plan had already paid a substantial amount of money on the participant's behalf.  *Id.*   However, the Court found the argument that "in order to override the make whole doctrine, the plan must include language 'specifically allowing the Plan the right of first reimbursement out of any recovery the participant was able to obtain even if the participant were not made whole'" to be unpersuasive.  *Id.* at 352 (quoting *Cagle v. Bruner*, 112 F.3d 1510, 1522 (11th Cir. 1997)).   The Court found that "the Plan's reimbursement language is unambiguous, and the provisions's reference to 'any recovery' overrides the make whole rule."  *Id.*  As in *Walker*, this Court will not apply the make whole doctrine where the plan language unambiguously refers to "any" payments received by Defendant.  As the Third Circuit stated in *Ryan*, "[i]ndeed, it would be inequitable to permit the [participants] to partake of the benefits of the Plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain."  78 F.3d at 127-28.[5]

    In sum, the Court has determined that Plaintiff's claim falls under ERISA and is for equitable relief, and that the Plan language is unambiguous and supports Plaintiff's claim for equitable restitution.  Thus, Defendant is entitled to neither dismissal nor summary judgment.

### C.  Plaintiff's Motion for Summary Judgment

---

    [5] The Court notes that Defendant would apparently have the Court do away with ERISA reimbursement altogether, arguing that "[b]y requiring reimbursement of a plan-covered expense from a tort settlement or judgment, an injured person is denied whatever measure of recovery he has been able to obtain for his other uninsured losses . . . . [I]t is patently inequitable to restore a health plan's economic position . . . at the expense of its beneficiary's recovery for other non-economic damages . . . ."  (Def.'s Opp'n & Reply Br. at 17-18.)  The Court refuses to accept what is essentially an invitation to negate ERISA's preemption clause, which shows "Congress' intention to make ERISA 'an area of exclusive federal concern.'"  *Blue Gray*, 248 F.3d at 212 (quoting *FMC Corp.*, 498 U.S. at 58).

For the same reasons discussed in denying Defendant's motion, this Court will grant Plaintiff's motion for summary judgment.  Plaintiff is entitled to judgment as a matter of law as there are no genuine issues of fact that can be resolved in favor of either party.

However, Plaintiff is not entitled to attorney's fees.  29 U.S.C. §1132(g)(1) states "[i]n any action under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."   Thus, the awarding of attorney's fees is discretionary and "a successful plaintiff in an ERISA litigation is not entitled to a fee award solely because he prevails on his case." *Tomasko v. Ira H. Weinstock, P.C.*, 357 Fed. Appx. 472, 476 (3d Cir. 2009).   The Third Circuit requires that district courts:

> [i]n determining whether to make any award of fees under ERISA, [consider] five policy factors: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position.

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).

The Court will analyze each of these factors in turn.  First, while "bad faith normally connotes an ulterior motive or sinister purpose . . . [a] losing party may be culpable . . . without having acted with an ulterior motive . . . . [C]ulpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault." *McPherson v. Employees' Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994) (quoting *Black's Law Dictionary* (6th ed. 1990)) (internal citations omitted).  Moreover, "[a] party is not culpable merely because it has taken a position that did not prevail in litigation." *Id*. at 257.  Applied here, the Court concludes that Defendant has exhibited neither bad faith, nor the requisite "culpability" to weight this factor in favor of an

attorney's fee award.  Second, the Court determines that Defendant's ability to satisfy an attorney's fee award is questionable given that his UIM settlement was designed to compensate him for physical and occupational injuries.  Indeed, the evidence suggests that Defendant's injuries are such that he "will have chronic, permanent disabling shoulder pain" and "while able to supervise, has not been nor will he be able in the future to perform the tasks of a pipe fitter, which was his trade prior to the accident."  (Solomon Cert. Ex. B. Letter from Scott A. Rodeo, M.D.)  Third, the Court concludes that an attorney's fee award in the present case is not likely to have a deterrent effect in the future.  This is particularly true in light of the fact that the Fund apparently adopted a new, highly detailed Plan and SPD on January 1, 2008.  (Compl. Ex. E.)  Finally, the Court concludes that the final two factors weigh in favor of an attorney's fee award in this case.  Plainly, reimbursing the fund for its attorney's fees in this matter would confer some benefit on the members of the pension plan as a whole, and clearly the very nature of the Court's decision establishes that the merits of Plaintiff's position vastly outweigh those of Defendant's.

After considering these factors, with the first, second, and third factors standing against awarding attorney's fees to Plaintiff, the Court will deny Plaintiff attorney's fees.  There is no "presumption in favor of granting attorney's fees to prevailing plaintiffs [that] is required or appropriate under [§1132(g)]."  *Ellison v. Shenango, Inc. Pension Bd.*, 956 F.2d 1268, 1275 (3d Cir. 1992).  While a party is not required to demonstrate all five elements in order to be awarded attorneys' fees, it is up to the court to weigh these factors against each other.  *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 275 (3d Cir. 2004); *see also DiGiacomo v. Teamsters Pension Trust Fund*, 154 Fed.Appx. 312, 314 (3d Cir. 2005) ("Even assuming, without deciding, that the remaining *Ursic* factors weigh in favor of an award of attorney's fees, we believe that the

first and fifth *Ursic* factors so strongly militate against such an award as to control our determination.").  The Court concludes that the factors against awarding attorney's fees in the present case outweigh those in favor and is therefore exercising its discretion to deny Plaintiff's request for attorney's fees.

### III.    CONCLUSION

For the foregoing reasons, the Court will GRANT summary judgment to Plaintiff on its ERISA claim and DENY Defendant's motions to dismiss and for summary judgment in the alternative.  In light of this decision, the Court will order this case CLOSED.  An appropriate form of order accompanies this memorandum opinion.

Dated: October 22, 2010

_____/s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.

22